

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 7, 2020

**BY ECF**

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:     *United States v. Raven Bush*, **18-cr-907 (PAC)**

Dear Judge Crotty:

      The Government writes in opposition to the defendant's motion for a sentencing reduction under Title 18, United States Code, Section 3582(c)(1)(A)(i).  Bush has not met his burden to demonstrate an extraordinary and compelling circumstance justifying a sentencing reduction and the Section 3553(a) factors militate against release.

    **A.  Background**

      From June 20, 2018, to October 2, 2018, Raven Bush (the "defendant"), and his co-conspirator Ronald Johnson, sold 16 firearms over the course of five separate transactions.  (PSR ¶¶ 11-12.)  The defendant also sold ammunition as part of these transactions.  (*Id.*)  Neither Mr. Bush nor Mr. Johnson were licensed to deal in firearms.  (*Id.* at ¶ 14.)  One of the 16 firearms had an altered or obliterated serial number.  (*Id.* at ¶ 25.)

      On December 20, 2018, a Grand Jury returned a four-count Indictment.  (*Id.* at ¶ 1.)  The Indictment charged Bush with three offenses:  firearms trafficking conspiracy, in violation of Title 18, United States Code, 371; firearms trafficking, in violation of Title 18, United States Code, 922(a)(1)(A) and 2; and being a felon in possession of a firearm, in violation of Title 18, United States Code, 922(g)(1) and 2.

      On January 22, 2019, Bush pleaded guilty to all of the counts against him in the Indictment (Counts 1, 2, and 3) without a plea agreement.  (*Id.* at ¶ 6.)  On April 18, 2019, this Court sentenced Bush to principally 48 months' imprisonment, which was below the Guidelines calculation in the PSR of 57-71 months' imprisonment.  (*Id.* at 21.)

      On or about July 16, 2020, the defendant filed this Motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

### B. Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" that:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. That section provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3). The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." *Id.* § 1B1.13 Application Note 1. Application Note 1 provides in relevant part:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *Id.* § 1B1.13 Application Note 1. A catchall provision also allows the Director of the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Application Note 1(D). But the Director of the BOP has not made such a determination in this case. Regardless of the theory of "extraordinary and compelling reasons," the 18 U.S.C. § 3553(a) factors are relevant to whether compassionate release is warranted. See 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of the motion, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist. *See, e.g.*, *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) (same); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

**C. Discussion**

The defendant has not met his burden to justify release. As explained below, the defendant does not have any medical condition that qualifies as an extraordinary or compelling reason for a sentencing reduction and the sentencing factors all militate against early release.

**1. The Defendant Has Not Proved that Extraordinary and Compelling Reasons Exist.**

The defendant's stated bases for release should not be considered in a vacuum. The extent to which the BOP's response to the pandemic has mitigated the risk that COVID-19 poses to inmates must also be taken into account. The Government will not describe those steps in detail here, as the Court is familiar with them from deciding other compassionate release motions. *See, e.g.*, *United States v. Kosic*, No. 18 Cr. 30 (PAC) (S.D.N.Y. June 11, 2020) (denying motion from inmate at Fort Dix and noting a declaration from the BOP's clinical director at Fort Dix detailing the efforts to prevent and contain COVID-19 at the facility.)

Suffice to say that the BOP continues to operate under modified conditions, including suspension of social visits and inmate movements (with limited exceptions where special procedures are followed to prevent the spread of COVID-19); continuous screening of inmates; quarantine of newly arriving inmates; isolation and testing of symptomatic inmates with exposure risk factors; and other modified operations designed to maximize social distancing.[1] While several prison facilities have had a significant number of inmates and staff test positive for COVID-19, the BOP's preventive measures have proven effective at FCI Fort Dix, where there are currently no inmates or staff who tested positive and 39 inmates and 5 staff have recovered. It is against this background that Bush contends, among other things, that he has chronic kidney disease, was a former smoker and marijuana user, and that these medical conditions justify release.

As an initial matter, the Government is attaching under seal the medical records that it received from the BOP (*see* Exhibit A). Bush's medical records reflect that in October 2019 Bush had an isolated elevation in serum creatinine, which suggests abnormal kidney function. However, in December 2019 and May 2020, Bush was tested again and his serum creatinine levels returned to normal. The Government has spoken with Dr. Sood (the doctor who evaluated Bush) and has confirmed that, in Dr. Sood's view, Bush does not have chronic kidney disease. (*See* Exhibit B.) Dr. Sood informed the Government, in substance and in part, that the medical records identify Bush as having chronic kidney disease in remission because there is not a code on the medical records to reflect an isolated elevation in serum creatinine.

---

[1] These conditions, as well as the BOP's response to COVID-19 more generally, are described in detail on the BOP's COVID-19 resources webpage, which is available at https://www.bop.gov/coronavirus/.

Dr. Sood's view that Bush does not have chronic kidney disease is further supported by the medical records, which reflect that the kidney disease was in "remission" and that Bush did not know about this issue until July 2020.  *See* Ex. A (7/13/20 Encounter Date ("Patient Wants to know why his Medical Record states that he is in Kidney Disease (Stage 2) Remission but never was told he had it.")).  Accordingly, Bush does not have chronic kidney disease and this medical condition does not support his application for relief.[2]

Bush's assertion that he is "rehabilitat[ed]" (Motion at 14-15)—is an argument barred by statute and the binding policy statement.  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [S]ection 3582(c)(1)(A) of [T]itle 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason*.") (emphasis added); U.S.S.G. § 1B1.13 app. note 3 ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this police statement.").  Accordingly, Bush's commendable work while imprisoned does not warrant a sentencing reduction.

### 2. The Section 3553 Factors Counsel Against Release

Even assuming that Bush's medical conditions or rehabilitation present an extraordinary and compelling circumstance (which they do not), the Motion should be denied after considering the Section 3553 factors.

The § 3553(a) factors remain highly relevant for this Court in determining whether to grant a defendant's motion for compassionate release.  Those factors weigh against defendant's Motion.  *See* 18 U.S.C. § 3582(c)(1)(A) (directing the court to only consider a motion for compassionate release "after considering the factors set forth in section 3553(a) to the extent that they are applicable"); *United States v. Israel*, No. 05 Cr. 1039 (CM), 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019) ("The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").  The most important Section 3553(a) factors here are a) the nature of the offense and the need for the sentence to reflect the seriousness of the crime; b) the need to provide adequate deterrence; c) the need to protect the public from further crimes of the defendant; and d) to promote respect for the law. 18 U.S.C. §§ 3553(a)(1), (2).

As an initial matter, the defendant committed a serious and dangerous defense.  Not only did the defendant sell 16 firearms, but he also supplied ammunition as part of the transactions.  (PSR ¶ 11.)  The defendant sold these dangerous weapons (as well as accompanying ammunition) for a profit, without regard for how they could be used to injure or kill others.  As the defendant certainly understood, customers who sought to illegally purchase firearms—rather than subject themselves to

---

[2] According to the updated CDC guidance, people with a history of smoking "might be at an increased risk" for severe illness from COVID-19.  Accordingly, given that the CDC does not include smoking as a condition on its list of conditions placing people at an increased risk of severe illness, Bush's history of smoking does not constitute an exceptional circumstance warranting relief.

the background check and other requirements of a legal purchase—were likely to be individuals who were either prohibited from possessing firearms or who wished to hide their ownership of a gun. Indeed, that one of those firearms had defaced serial number—thus hiding its origin—only highlights the defendant's apathy to how the firearms would affect the community.

Moreover, the defendant's criminal history demonstrates that his prior sentences, including a one-year sentence for petit larceny (PSR ¶ 43), and a two-year sentence for criminal sale of a controlled substance in the fifth degree (PSR ¶41), have not deterred him from continuing to break the law, and that reducing his sentence would not further the statutory purpose of deterring Bush's criminal conduct. Accordingly, the Section 3553(a) factors counsel against early release.

### D. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion for a sentencing reduction pursuant to 18 U.S.C. § 3582(c).

Respectfully submitted,

AUDREY STRAUSS  
Acting United States Attorney

By:   /s/  
Peter J. Davis  
Assistant United States Attorney  
Southern District of New York  
(212) 637-2468

cc: Raven Bush (by ECF and Mail)